[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-12590

_____

CHRISTOPHER OUNJIAN,

        Plaintiff-Appellant,

*versus*

GLOBOFORCE, INC.,
d.b.a. Workhuman,
a.k.a. Globoforce Group PLC,
a.k.a. Globoforce Limited,

        Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cv-04575-TKW-MJF

———————————

Before WILLIAM PRYOR, Chief Judge, ABUDU, Circuit Judge, and BARBER,[*] District Judge.

BARBER, District Judge:

Appellant Christopher Ounjian alleged that when he objected to unlawful conduct by his employer, appellee Globoforce, Inc., it retaliated against him and forced him to resign. Ounjian filed suit against Globoforce, alleging he was constructively discharged and seeking damages under the Florida Private Whistleblower Act and Florida Deceptive and Unfair Trade Practices Act. The district court dismissed Ounjian's complaint with prejudice, holding that Ounjian failed to allege facts constituting a constructive discharge for purposes of the Florida Private Whistleblower Act and failed to allege damages cognizable under the Florida Deceptive and Unfair Trade Practices Act. We agree with the district court that the complaint failed to state a claim for relief under either statute. Ounjian did not seek leave to amend, and any amendment would have been

---

[*] Honorable Thomas P. Barber, United States District Judge for the Middle District of Florida, sitting by designation.

futile. Accordingly, we affirm the district court's dismissal of the complaint with prejudice.

## I. BACKGROUND

Because this is an appeal from an order dismissing a complaint, we recount the facts alleged in the complaint, accept them as true, and construe them in the light most favorable to Ounjian. *See Ingram v. Kubik*, 30 F.4th 1241, 1247 (11th Cir.), *cert. dismissed*, 142 S. Ct. 2855 (2022).

Christopher Ounjian worked as a Global Account Executive for Globoforce, Inc. Globoforce sells its clients "reward and recognition services" by which they can provide their employees with "recognition points" that can be used to buy gift cards and merchandise on a website operated by Globoforce. Beginning in early 2019, Ounjian came to believe the company was misrepresenting the value of its services to clients and potential clients, principally by telling them that the merchandise on its website was priced at market value, when in fact many of the items on the website reflected a substantial markup, resulting in hidden profits for Globoforce. Ounjian raised this issue with the company's management, but upon receiving no satisfactory answer, he began providing clients and potential clients with information he regarded as more truthful, including the actual markup on website merchandise.

Ounjian alleged that following his objections and his providing truthful information to clients, Globoforce's management retaliated against him. Specifically, in July and August 2021, Tom

Vitkofsky, the Vice President of Sales, leveled unwarranted criticism at Ounjian regarding his performance, attitude, and "negativity." Vitkofsky also notified Ounjian that the company was considering transferring him from his position as Global Account Executive to a position as Senior Enterprise Sales Executive, which Ounjian viewed as a demotion and believed would have required substantially more work than his current position. Ounjian objected to the proposed change because, among other reasons, his wife had serious medical issues that would prevent him from handling the increased workload. Vitkofsky passed this confidential family health information to the company's human resources department, in violation of Globoforce's internal policies. An HR representative then contacted Ounjian ostensibly to "check in" with him to make sure he was "all right" but in reality, to attempt to "sell" Ounjian on accepting the demotion or to establish a pretext for terminating him as a "disgruntled" employee.

When Ounjian continued to object to the proposed transfer, Vitkofsky told him that his options were to accept the transfer or be terminated. Globoforce, however, withdrew the threatened transfer when Ounjian and his counsel advised the company he regarded its actions as unlawful retaliation. Ounjian nevertheless resigned the next month. His salary at Globoforce had exceeded $1 million a year, and he took a position at a different company making only $350,000 a year.

Ounjian filed suit in district court alleging that he was constructively discharged in retaliation for his objections and refusal to

participate in the company's unlawful conduct and asserting claims for relief under the Florida Private Whistleblower Act and the Florida Unfair and Deceptive Trade Practices Act. Globoforce moved to dismiss the complaint with prejudice on the ground that it failed to state a claim for relief. The district court granted the motion, holding that the complaint failed to allege facts showing that Ounjian was constructively discharged or was the subject of any other retaliatory personnel action as required for a claim under the Florida Private Whistleblower Act. The district court also held that Ounjian failed to allege unfair or deceptive conduct directed at consumers, as opposed to conduct directed at Ounjian himself as an employee, and failed to allege damages cognizable under the Florida Deceptive and Unfair Trade Practices Act. Ounjian did not seek leave to amend, and the district court therefore dismissed the complaint with prejudice.

## II. STANDARD OF REVIEW

We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Dukes Clothing, LLC v. Cincinnati Ins. Co.*, 35 F.4th 1322, 1325 (11th Cir. 2022) (internal quotations and citation omitted). The complaint must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. We may

affirm the district court's judgment on any ground supported by the record. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).

### III. DISCUSSION

This diversity case involved the application of two Florida statutes. The complaint included a third count under Massachusetts law, pleaded as an alternative in the event the court found Florida law did not apply. The district court concluded that Florida law applied and dismissed the third count. That ruling is not challenged on appeal, and Florida law therefore controls our analysis. On state law issues, we are bound by decisions of the Florida Supreme Court. *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021). When that court has not spoken, we must follow decisions of Florida's intermediate appellate courts, "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Id.* (internal quotations and citation omitted).

#### A. Florida Private Whistleblower Act

The first count of Ounjian's complaint asserted a claim under the Florida Private Whistleblower Act ("FPWA"). The FPWA in relevant part prohibits an employer from taking a "retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in," conduct that violates a law, rule, or regulation. Fla. Stat. § 448.102(3). Thus, the elements of an FPWA claim are: (1) protected activity, (2) a retaliatory personnel action and (3) a causal connection between the two. *See id.*;

*Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. Dist. Ct. App. 2015); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (setting forth elements of a retaliation claim under Title VII). An FPWA claim is analyzed under the same standards as a Title VII retaliation claim. *See, e.g.*, *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000); *Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 813 (Fla. Dist. Ct. App. 2020). We assume *arguendo* that Ounjian sufficiently alleged that he engaged in protected activity and focus our analysis on the second and third elements.

The district court held that Ounjian's complaint failed to allege the second element, a retaliatory personnel action. A "[r]etaliatory personnel action" is defined as a "discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." Fla. Stat. § 448.101(5). To meet this requirement, the complaint must allege facts showing the employer took an action that was "materially adverse," that is, one that caused injury or harm that would dissuade a reasonable employee from engaging in the protected activity. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (discussing "materially adverse" for purposes of Title VII retaliation claims).

The complaint alleged two types of retaliatory actions. First, Ounjian identified specific acts consisting of (1) a few instances of informal verbal criticism of Ounjian's attitude and performance, (2) the improper disclosure to Globoforce's human resources

department of family health information Ounjian shared with Vitkovsky, and (3) a threatened demotion. Second, Ounjian alleged that because he faced the choice of participating in unlawful activity or resigning, his resignation amounted to a constructive discharge.

The district court ruled that the specific acts alleged did not amount to retaliatory personnel actions under the FPWA, and Ounjian does not challenge that ruling. Instead, he focuses on his allegation that he was constructively discharged. Constructive discharge requires plausible allegations the employer intentionally created conditions so "intolerable" that a reasonable employee would feel compelled to resign. *See Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (constructive discharge under Title VII). This is an "onerous task" and requires pervasive and severe conduct by the employer going beyond that required for a hostile work environment claim. *Bryant v. Jones*, 575 F.3d 1281, 1298–99, 1307 (11th Cir. 2009) (constructive discharge under 42 U.S.C. § 1981, which has the same requirements as Title VII).[1] The existence of a constructive discharge is determined under an objective,

---

[1] A hostile work environment requires a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836-37 (11th Cir. 2021) (internal quotations omitted).

22-12590               Opinion of the Court                            9

"*reasonable* employee" standard, not by reference to a plaintiff's subjective feelings. *See White*, 548 U.S. at 68–69.

The alleged instances of criticism, improper disclosure of personal information, and withdrawn demotion threat, taken individually or collectively, do not meet the high bar for stating a constructive discharge claim. Ounjian does not argue they do. Instead, he attempts to bypass the standard altogether by arguing that a constructive discharge necessarily occurs whenever an employee resigns because an employer engages in unlawful conduct and requires or requests that the employee participate. In support of this argument, Ounjian relies on a non-controlling Florida federal district court decision that involved far more severe and pervasive conduct by the employer, and on federal decisions from other states that do not represent the law of Florida.

Additionally, the timeline of events alleged in Ounjian's complaint negates any inference he was "compelled" to resign. Ounjian continued to participate in the sales practices he objected to as unlawful for at least two years, from March 2019 to March 2021. He obviously was not compelled to resign during that entire period. While Ounjian's complaint included a conclusory allegation that Globoforce "insisted" he "go along with the illegal misrepresentations as a condition of continued employment," his specific factual allegations instead described only a lack of responsiveness to his questions and lack of approval for the disclosures he proposed. Ounjian concedes on appeal that Globoforce never "actually

10              Opinion of the Court              22-12590

forced him to send out fraudulent proposals before his resignation."

The allegations in Ounjian's complaint make clear that he acted on his own volition and provided accurate information to clients. He alleged that when he began to do so in March 2021, Globoforce took actions Ounjian regarded as retaliatory, but none caused him any cognizable harm, much less reasonably compelled him to resign. When the company threatened him with demotion, instead of resigning, he asserted his legal rights, and Globoforce withdrew the threat. There is no allegation that the company took any further action or made any further threat from that point until Ounjian resigned. Ounjian, having admittedly never been forced to participate in unlawful conduct, and having persuaded his employer to withdraw the only significant adverse action it had threatened, was not faced with circumstances so "intolerable" that a reasonable employee in his position would be compelled to resign.

Ounjian argues that Globoforce's retaliatory actions, while not independently actionable, show that Globoforce intended to terminate him if he refused to participate in the improper conduct, and that it would have done so in the future had he not resigned. The FPWA, however, does not prohibit retaliatory intentions, plans, or motives; it prohibits "retaliatory personnel *action[s]*." Fla. Stat. § 448.101 (emphasis added). Nor can a claim of constructive discharge be based on speculation about future actions an employer might take. *Fitz*, 348 F.3d at 978. Even if, at one point in time, an employer harbors a desire or even devises a plan to take some

22-12590               Opinion of the Court                        11

adverse action, "[t]he employer might never carry out the plan for several reasons," including a change in its view of the situation or the receipt of legal advice that the planned action would trigger liability. *Id.* at 978 n.4.

Another problem relates to the third element of Ounjian's FPWA claim, causation. The FPWA requires a *"retaliatory* personnel action" taken *"because* the employee has . . . [o]bjected to or refused to participate"* in the unlawful conduct. Fla. Stat. § 448.102(3) (emphasis added). Accordingly, there must be a causal connection between the protected activity and the adverse employment action—that is, the desire to retaliate must be a "but-for" cause of the adverse action. *See Chaudhry*, 305 So. 3d at 817 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). And nothing in Ounjian's complaint plausibly suggests that the creation or continued existence of the alleged improper sales practices constituted retaliation for Ounjian's protected activity. To the contrary, the practices Ounjian argues drove him to resign necessarily existed prior to Ounjian's objections to them. Thus, Globoforce engaged in the practices that prompted his resignation *despite* his objections, not *because* of them. To hold that the mere continued existence of practices to which an employee objects allows the employee to resign and assert an FPWA claim would read the retaliation element out of the statute. The district court correctly concluded that the complaint failed to state a claim for relief under the FPWA.

### B. Florida Deceptive and Unfair Trade Practices Act

Plaintiff's second count asserted a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A person "who has suffered a loss as a result of a violation" may bring an action and recover "actual damages," plus attorney's fees and court costs. Fla. Stat. § 501.211(2). To assert a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages. *See, e.g.*, *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. Dist. Ct. App. 2008).

A plaintiff need not be a consumer to assert a FDUTPA claim. *See Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019); *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. Dist. Ct. App. 2016); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. Dist. Ct. App. 2016); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015). However, the plaintiff must "prove that there was an injury or detriment to consumers." *Caribbean Cruise Line*, 169 So. 3d at 169 (emphasis omitted); *see also Stewart Agency*, 266 So. 3d at 212 ("While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer.").

The "actual damages" required for a FDUTPA claim have been defined as "'the difference in the market value of the product or service in the condition in which it was delivered and its market

22-12590               Opinion of the Court                    13

value in the condition in which it should have been delivered according to the contract of the parties.'" *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). Consequential damages are not available. *Id*.

The district court dismissed the FDUTPA count on two grounds. First, the court ruled that while a FDUTPA plaintiff need not be a consumer, the plaintiff must allege an unfair or deceptive practice directed at consumers. Ounjian's FDUTPA claim, however, was based on alleged adverse personnel actions directed *at him*, not at consumers. Second, the court ruled that the damages Ounjian sought, which resulted from the loss of his employment, were not cognizable as "actual damages" under FDUTPA.

The conclusory allegations of Ounjian's FDUPTA count, as the district court noted, allege conduct directed at Ounjian, rather than conduct directed at and injurious to consumers. However, the complaint's general allegations assert that Globoforce made misrepresentations to its customers, and we will assume *arguendo* these allegations sufficiently assert deceptive or unfair actions in the conduct of trade or commerce that injured or were likely to injure consumers. We will further assume the more doubtful proposition that the connection between the unfair or deceptive conduct towards consumers and Ounjian's loss of employment is sufficiently direct to support a cause of action for Ounjian under FDUTPA. We focus instead on the simplest and narrowest grounds supporting the district court's dismissal of the complaint, FDUTPA's requirement of

"actual damages." *See Royal Palm Vill. Residents, Inc. v. Slider*, 57 F.4th 960, 965 (11th Cir. 2023) ("[W]e are a federal court sitting in diversity. Presented with two possible ways of resolving this case, we rely upon the narrow ground in order to decide as little Florida law as is necessary to the result." (internal quotations and citation omitted)).

Relying on the decision of Florida's Second District Court of Appeal in *Smith*, 872 So. 2d at 994, the district court held that Ounjian's requested damages resulting from the loss of his employment with Globoforce are not cognizable under FDUTPA. In *Smith*, a car dealership employee sued the dealership under FDUTPA, alleging the dealership wrongfully terminated her when she purchased a used car from another dealership. *Id.* at 993. She alleged the employer's action violated a Florida statute prohibiting termination based on an employee's doing business or not doing business with any merchant, and that it thereby also violated FDUTPA. *Id.* She sought an injunction reinstating her employment and damages relating to her loss of employment. *Id.* The dealership moved to dismiss, arguing that the complaint really sought damages for wrongful termination under the "guise" of a FDUTPA claim. The trial court dismissed the complaint with prejudice. *Id.*

The Fourth District Court of Appeal affirmed, holding the plaintiff had failed to allege a loss recoverable under FDUTPA. FDUTPA allows a person who has suffered a loss due to a violation to recover "actual damages," which consist of the "difference in the market value of the product or service in the condition in which it

was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties," and excludes consequential damages. *Id.* at 994 (internal quotations and citation omitted). The court held the plaintiff's complaint failed to allege damages cognizable under FDUTPA. *Id.* The court also rejected her claim for injunctive relief reinstating her employment because the loss of employment was an indirect and consequential result of the alleged violation, i.e., the requirement that employees purchase vehicles only from the dealership. *Id.*

Ounjian's FDUTPA count sought damages for loss of employment. The district court accordingly held that *Smith* was "binding on the Court and it forecloses Plaintiff's FDUTPA claim." Ounjian does not dispute that *Smith*, if applied, required dismissal of his FDUTPA claim. He suggests instead that *Smith*'s holding does not reflect the current law of Florida. Specifically, he relies on federal district court cases allowing FDUTPA claims in the employment context, which, in turn, rely on Florida cases beginning with *Caribbean Cruise Line* in 2015 that hold the 2001 amendments to FDUTPA expanded the statute's reach to allow claims by non-consumers. The damages limitation applied by *Smith*, Ounjian argues, no longer reflects Florida law because such a limitation would effectively preclude FDUTPA claims by non-consumers.

There is a tension between the reasoning and result in *Smith* and the cases allowing FDUPTA claims by non-consumers, and the Florida courts may, at some point in the future, resolve this tension by expanding the scope of FDUTPA damages. But they have not

done so yet. *Smith* has not been overruled, and the cases recognizing the viability of FDUTPA claims by non-consumers—*Stewart*, *Caribbean Cruise Line, Bailey*, and *Off-Lease*—do not disagree with or criticize *Smith*. Absent a contrary decision from the Florida Supreme Court, or a persuasive indication that the Florida Supreme Court would decide the issue differently, we are bound to apply *Smith* and affirm the district court's dismissal of Ounjian's FDUTPA claim. *See, e.g.*, *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012).

Finally, the district court correctly dismissed Ounjian's complaint with prejudice. A district court may dismiss a complaint with prejudice where the plaintiff fails to request leave to amend, or where the complaint could not be more carefully drafted to state a valid claim. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Both aspects are present here. Ounjian did not request leave to amend. The allegations of his 341-paragraph complaint were detailed and comprehensive. The flaws requiring dismissal inhered in the nature of the claims Ounjian asserted, rather than a correctible pleading deficiency.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Globoforce.